**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Daniel J. Burkhart,                           )        No. CV-07-675-TUC-CKJ
                                              )
          Plaintiff,                          )        **ORDER**
                                              )
vs.                                           )
                                              )
Intuit, Inc. et. al,                          )
                                              )
          Defendant.                          )
                                              )
                                              )

          Pending before the Court is Defendant's Opposition to Plaintiff's First Amended Complaint or, in the Alternative, Motion to Strike Plaintiff's First Amended Complaint ("DMTS") [Doc. #45],  Plaintiff's Motion for Partial Summary Judgment on the Issue of ADA Qualification ("PMSJ") [Doc. #67], and Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment on the Issues of ADA Qualification and Cross Motion for Summary Judgment ("DMSJ") [Doc. #69].  For the reasons set forth below, Defendant's Motion to Strike Plaintiff's First Amended Complaint and Cross Motion for Summary Judgment are granted.  Plaintiff's Motion for Partial Summary Judgment on the Issue of ADA Qualification is denied.

. . .

. . .

. . .

. . .

**I.      FACTS AND PROCEDURAL BACKGROUND**

   *A.      Plaintiff's Employment at Defendant*

Plaintiff Daniel J. Burkhart ("Plaintiff") was an employee of Defendant Intuit, Inc. ("Defendant"), in the position of Sales Agent, from March 21, 2005 to December 16, 2005, when Defendant terminated Plaintiff's employment.[1]  Prior to beginning his employment, Plaintiff, a Vietnam War veteran, was diagnosed with Post Traumatic Stress Disorder ("PTSD") by the Department of Veterans Affairs ("Veterans Administration") and was assessed with a 30% disability rating by the Veterans Administration.

Plaintiff applied for the position of Sales Agent in March 2005 by submitting an electronic application.  One question on the application was "Have you ever plead 'guilty' or 'no contest' to, or been convicted of a crime?"  Plaintiff responded "N," indicating that he had never plead "guilty" or "no contest" to a crime, nor had he been convicted of a crime.  Pursuant to Defendant's pre-employment screening policies, Defendant conducted a limited background check in March 2005, which requested information going back seven or eight years.  The limited background check did not reveal any convictions during that time period.  Plaintiff had, however, been convicted of numerous felonies for financial crimes in the 1990s, and had served time in prison as a result.  Defendant was not made aware of Plaintiff's criminal history until discovery in this case, when Plaintiff revealed during deposition that he had been convicted in the late 1980s for "aiding and abetting" and other crimes that he did not recall.  Following Plaintiff's admission, in June 2008, Defendant conducted a background check that was not limited in time, which revealed that Plaintiff had numerous felony convictions in 1990 for financial crimes, including conspiracy, aiding and abetting, wire fraud, and securities fraud.  Pursuant to Defendant's pre-employment screening policies and procedures, knowledge of Plaintiff's

---

[1]Unless otherwise noted, the statement of facts is taken from Defendant's Opposition to Plaintiff's Motion for Partial Summary Judgment on the Issue of ADA Qualification and Cross Motion for Summary Judgment ("DMSJ").     [Doc. #69].     These facts are uncontroverted by the Plaintiff.

1   convictions would have presumptively disqualified him from employment at Defendant.

2   Moreover, had Plaintiff responded truthfully on his employment application, Defendant

3   would have conducted an unlimited background check to determine the nature of

4   Plaintiff's convictions.

5          Lacking knowledge of Plaintiff's convictions and misleading resume, Defendant

6   hired Plaintiff for the position of Sales Agent and Plaintiff began work on March 21,

7   2005.  Pursuant to Defendant's procedure in 2005, on the first day of training during

8   "New Hire Orientation," Defendant provided new-hires with information regarding

9   Defendant's employment policies and procedures and how to access those policies and

10  procedures on the Intranet, including information regarding the ADA.  In a Policy Review

11  Confirmation Form ("PRC"), Plaintiff checked the box "Americans with Disabilities Act

12  Policy," indicating he was made aware of Defendant's ADA policy.  The PRC provides

13  that in signing the form new-hires acknowledge they understand it is their responsibility

14  to go to Defendant's Intranet site and familiarize themselves with the company's policies

15  and procedures, and they should contact the Human Resources Manager should they have

16  any questions regarding those policies or procedures.  Plaintiff signed the PRC and dated

17  it March 21, 2005.

18         In addition to providing new-hires with information regarding important company

19  policies and procedures, Defendant's "Talent Acquisition" provides new-hires with two

20  confidential forms, an Equal Employment Opportunity Form ("EEO") and a Post-Offer

21  Enrollment Form ("POE").  New-hires are informed that completion of these forms is

22  entirely voluntary.  If the forms are completed and submitted, Talent Acquisition transfers

23  them to Defendant's HR Data Services department for entry into Defendant's employee

24  tracking software, PeopleSoft.  Per Defendant's confidentiality policy, once the data is

25  entered into PeopleSoft, the HR Data Services Department shreds the completed forms.

26  Only if an employee has voluntarily completed a POE form and requested

27  accommodation for a disability does Data Services notify Human Resources and/or the

28  ADA coordinator.  The POE form explicitly provides "[i]nformation you submit will be

1   kept confidential, except that (1) supervisors and manager *may* be informed regarding

2   restrictions on the work or duties of individuals with disabilities or special disabled

3   veterans, and regarding necessary accommodations . . . ." (emphasis added).  PMSJ Exh.

4   7 [Doc. #67].  In his pleadings, Plaintiff asserts that "it was the implicit understanding of

5   [the POE form] that this information would be shared with supervisors and managers,

6   upon gathering of full information on the disability at a later date."  Pl.'s Reply in Support

7   of Mot. for Partial Summ. J. ("Pl.'s Reply") at 9:11-13 [Doc. # 72].

8          Pursuant to Defendant's shredding policy, Defendant's records do not contain

9   Plaintiff's EEO or POE, assuming he completed and submitted both forms.  In deposition,

10  however, Plaintiff asserted he retained a copy of his completed POE for his records

11  following orientation.  On the POE copy, Plaintiff checked two black spaces, identifying

12  himself as a "Vietnam-era Veteran" and a "Disabled Veteran."  PMSJ Exh. 7 [Doc. #67].

13  Defendant's PeopleSoft history indicates only that Plaintiff identified himself as a

14  Vietnam-era Veteran.

15         Although Plaintiff's POE copy identifies Plaintiff as a  "Disabled Veteran," it also

16  reveals that Plaintiff answered "No" in response to the form's question: "[d]o you require

17  a reasonable accommodation to perform the essential functions for which you have been

18  hired?" and left blank the space provided for the follow-up question, "If yes, describe the

19  accommodation required to perform the essential requirements for which you have been

20  hired."  PMSJ Exh. 7 [Doc. #67]. At no time during Plaintiff's employment did Plaintiff

21  inform Defendant, either verbally or in writing, that Plaintiff suffered from PTSD.

22  Although Plaintiff commented to co-workers and training supervisors that he suffered

23  from a "mental disability" or a "stress related disability," at no time did he affirmatively

24  inform Defendant that he suffered from PTSD.  Notably,  Plaintiff also failed to access

25  Defendant's Intranet site to retrieve information regarding how to inform Defendant

26  about his disability and request an accommodation, and failed to contact Defendant's

27  ADA coordinator.  In Plaintiff's pleadings to the Court, Plaintiff confirms that he did not

28  require any accommodation on March 21, 2005, his date of hire, and asserts only that his

1   PTSD was exacerbated as "stress conditions mounted" during his last twenty (20) days of

2   employment. Pl.'s Reply at 9:27-28 [Doc. # 72].  During this time, however, Plaintiff was

3   placed on a Performance Improvement Plan for poor performance and a Final

4   Performance Improvement Plan when his performance did not improve.  Plaintiff was

5   placed on the Performance Improvement Plan on November 30, 2005, and was placed on

6   the Final Performance Improvement Plan on December 9, 2005.[2]  Notably, in his

7   pleadings, Plaintiff admits he had difficulty mastering a sales technique employed by

8   Defendant known as "Spin Spelling," because "[Plaintiff's] direct sales experience from

9   prior sales activities did not require such rigid question and response matrix." Pl.'s Reply

10  at 4:20-21 [Doc. # 72].  Plaintiff's employment was terminated on December 16, 2005,

11  for failing to meet performance objectives.

12      Plaintiff asserts that he met with Human Resource Manager, Chris Hopkins,

13  merely six days before his termination, on December 12, 2005, "regarding a reassignment

14  as an accommodation," and specifically a reassignment to the position of Talent

15  Acquisition Coordinator.  PMSJ SOF ¶ 5 [Doc. #67].  Hopkins, however, per affidavit,

16  has no recollection of meeting with Plaintiff, nor is there evidence suggesting that

17  Plaintiff informed Hopkins that he suffered from PTSD and that the "reassignment" was

18  requested specifically as an accommodation for his PTSD.  The record does reveal,

19  however, that Defendant advertised the position of Talent Acquisition Coordinator, that

20  the position opened up on November 29, 2005, and that Plaintiff submitted a "Job Interest

21  Form" applying for the position.  PMSJ Exh. 6 [Doc. #67].  At no place on the Job

22  Interest Form did Plaintiff indicate that he suffered from PTSD and was requesting the

23  position as an accommodation.  Rather, in the space provided to answer the "Specific

24  _____

25      [2] Although irrelevant, the Court acknowledges Plaintiff's assertion that Defendant
    terminated Plaintiff in part as a result of it's reduction in sales force.  Plaintiff asserts that
26  Defendant asked Plaintiff to increase performance at the same time that Defendant was
    rerouting work to a call-center in India thereby rendering it impossible for Plaintiff to
27  increase sales as Defendant requested.  Pl.'s Reply at 10:8-27 [Doc. #72].  Assuming their
    truth, these facts standing alone do not give rise to an ADA claim.
28

1   Reason for Desire to Change," Plaintiff answered "I have the knowledge skills & ability

2   to do this job.  This position would build upon the skills that I possess."  PMSJ Exh. 6

3   [Doc. #67].  Plaintiff attached his resume to his pleadings, thus implying that he

4   submitted this resume with his application for the Talent Acquisition Coordinator

5   position.  *Id*.  Plaintiff testified at deposition, however, that his resume misrepresented his

6   relevant work experience.  Pursuant to Defendant's pre-employment screening

7   procedures, knowledge of the omission of information or the placement of misleading or

8   false information on an employment application would have also presumptively

9   disqualified Plaintiff from any position at Defendant.

10       *B.       Veterans Administration Disability Assessment*

11       It is undisputed that prior to his employment at Defendant, Plaintiff was diagnosed

12   with PTSD by Veterans Administration for rating purposes on September 8, 2004 and

13   was assessed with a 30% disability rating.  The 30% disability rating was assessed as a

14   result of Plaintiff's appeal from a previous rating of 10% disabled.   In assessing

15   Plaintiff's disability at 30%, the Veterans Administrated noted that "[a]lthough the

16   examiner commented you [Plaintiff] do not meet the criteria for the post traumatic stress

17   disorder diagnosis on this current exam, since it is a well established diagnosis in the

18   previous and ongoing treatment records, the diagnosis is continued for rating purposes at

19   this time . . . ."  PMSJ Exh. 1-B [Doc. #67].  As an example of the well-established

20   diagnosis of PTSD, Plaintiff submits a December 2002 letter from an adjudication officer

21   from the Department of Veterans Affairs that explains: "At this time [Plaintiff's] sleep is

22   disturbed by nightmare quality dreams on a weekly basis.  He has been experiencing

23   dissociative flashback type episodes on a weekly basis.  This re-experiencing of war zone

24   imagery has left him anxious and exhausted." PMSJ Exh. 4 [Doc. # 67].  The Veterans

25   Administration retroactively applied the 30% disability rating such that the rating was

26   assigned on March 24, 2004. PMSJ Exh 1-B [Doc. #67].  Pursuant to the Veterans

27   Administration's diagnosis, an evaluation of 30 percent disability is granted whenever

28   there is:

> [O]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self care and conversation normal) due to system symptoms as: depressed mood, anxiety, suspiciousness, panic attacks, chronic sleep impairment, [and] mild memory loss . . . .

*Id.*

Plaintiff emphasizes that his PTSD results in chronic sleep impairment, but admits that his sleep interruptions are controlled by the medication Trazodone. Although the medication does not "cure" Plaintiff's PTSD, or his sleep deprivation, Plaintiff asserts the medication was prescribed to be taken on an "as needed" basis.  PMSJ at 7:7-10; PMSJ SOF ¶ 3 [Doc. #67].  In his affidavit, he asserts:

> 4.  My symptoms recognized as part of the claim for PTSD include, but were not limited to, the interruption of my major life activity of sleep.  I suffer from an insomnia condition related to the flashbacks of war, and highlighted by current stressful conditions.  This interruption of a major life activity has resulted in occupational and social impairment with occasional decrease in work efficiency and intermittent periods of my inability to perform occupational tasks.  The sleep interruption has been controlled by the use of the prescribed medication Trazodone, HCL, 50MG, taken nightly.

PMSJ Aff. ¶ 4.

Plaintiff further emphasizes that his PTSD results in mood impairments that affect his work, although Plaintiff also admits that his mood is stabilized by the medication Flouxetine, which permits an individual to function with normal occupational and social relationships.  In his affidavit, he asserts:

> 5.  Additional symptoms of PTSD that manifest in my case are depression, anxiety, cynicism and distrust of authority, anger, psychiatric or emotional numbing, reaction under stress with survival tactics, negative self-image, memory impairment, emotional distance in intimate relationships, survivor guilt, avoidance of activities that arouse memories of the war, and flashbacks to combat experience.  I have undergone individual and group therapy, and I am currently taking the prescription medication Flouoxetine HCL 20MG, daily, to stabilize my mood, and allow normal occupational and social relationships in spite of the above mentioned symptoms.

PMSJ Aff. ¶ 5.

In deposition, Plaintiff testified that the affect his PTSD has on his sleep is interrelated to the affect his PTSD has on his work.  Plaintiff noted that his PTSD

1   displays "as a sleep disorder, and I have medication to get to sleep.  But without the

2   medication I have a serious sleep disorder which affects everything else in my life,

3   working, being able to be around crowds."  DMSJ Exh. D 192:16-19 [Doc. #69].

4   Plaintiff has successfully held jobs following employment at Defendant, specifically

5   Plaintiff has been employed as a tax assistant for two accounting firms.  Plaintiff's

6   employment with the accounting firms was temporary and terminated at the end of the tax

7   season.

8        *C.    The Current Litigation*

9        On July 20, 2007, Plaintiff filed a complaint ("Initial Complaint")  in pro se

10  against Defendant, ten "Doe Corporations," five named individual defendants and fifty

11  unnamed"John Doe" defendants (collectively "Individual Defendants"), in the United

12  States District Court for the Northern District of California.  Pl.'s Initial Complaint [Doc.

13  #23].  Plaintiff alleged that Defendant and the Individual Defendants violated Plaintiff's

14  rights under the Americans with Disabilities Act of 1990 ("ADA").  Specifically, Plaintiff

15  alleged that Defendant "[failed] to acknowledge the [Plaintiff's] mental disability

16  following [his] written and verbal notification of such disability,"  thereby engaging in:

17  (1) wrongful termination, (2) gross negligence, and (3) willful infliction of emotional

18  harm.  Pl.'s Initial Complaint at 3:24-26. Against the Individual Defendants specifically,

19  Plaintiff alleged they engaged in  "aiding and abetting in denyal [sic] of [his] civil rights"

20  by assisting "one-another to facilitate denial of Plaintiff's acknowledged rights."    Pl.'s

21  Initial Complaint at 5:15-20.

22        Following the filing of his Initial Complaint, Defendant's counsel, Michael

23  Aparicio ("Aparicio") sent a letter to Plaintiff, urging him to (1) transfer the case to the

24  proper venue - the District Court in Tucson, and (2) dismiss the claims against the

25  Individual Defendants pursuant to well-established Ninth Circuit precedent.  Pl.'s Memo.

26  in Opp. to Def.'s Mot. to Strike ("POMTS") Exh. 1 [Doc. #52].  Specifically, Aparicio

27  represented to Plaintiff that:

28

> [I]t is well-established in the Ninth Circuit that only an employer can be liable for violation of the Americans with Disabilities Act, not individual employees. *See Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993); *Rohm v. Homer*, 367 F.Supp. 2d 1278, 1284 (N.D. Cal. 2005); *Coffin v. Safeway, Inc.*, 323 F. Supp. 2d 997, 1002 (D. Ariz. 2004).

*Id.*

Following receipt of Aparicio's letter, Plaintiff entered into a Stipulation Agreement, agreeing to the terms set forth in Aparicio's letter. Stipulation and Transfer [Doc. #22]. Plaintiff stipulated to the following:

> Plaintiff and Defendant Intuit, Inc. . . . . agree that there is no basis for asserting claims under or based upon alleged violations of the Americans with Disabilities Act, against the individual defendants named in this case, pursuant to established Ninth Circuit precedent. *See Miller v. Maxwell's Int'l, Inc.*, 991 F.2d 583, 587 (9th Cir. 1993).

*Id.* at 2:16-19.

Pursuant to this stipulation, the Northern District of California entered the parties' Proposed Order, which states:

> Individuals who are not the employer cannot, as a matter of law, be liable to Plaintiff for alleged violations of the Americans with Disabilities Act. Accordingly, Plaintiff's claims against [the Individual Defendants] are DISMISSED WITH PREJUDICE.

*Id.* at 2:28-3:03.

Consequently, on December 17, 2007, the case was transferred to this Court, and the Individual Defendants were dismissed with prejudice.

On April 25, 2008, Plaintiff lodged his First Amended Complaint with the Court. Pl.'s First Amended Complaint [Doc. #40]. The First Amended Complaint reinstates the Individual Defendants and brings a new conspiracy claim pursuant to 42 U.S.C. § 1985(3) against them. On May 12, 2008, Defendant filed its Opposition to Plaintiff's First Amended Complaint, or in the Alternative, Motion to Strike Plaintiff's First Amended Complaint, alleging that Plaintiff's amendments would be futile because the amended complaint is  (1) barred by the doctrine of law of the case, (2) fails to state a claim, (3) is time-barred, and (4) is untimely pursuant to the Court's scheduling order.  DMTS [Doc. #45].  On May 29, 2008, Plaintiff filed his Response, alleging that Aparicio

1   misrepresented the law to Plaintiff, and Plaintiff relied on those misrepresentations when

2   he entered into the Stipulation Agreement.  POMTS [Doc. #52].  In Defendant's Reply,

3   filed on June 6, 2008, Defendant contested Plaintiff's allegations, asserting that Aparicio

4   did not misrepresent the law, and reasserting futility in amendment.  Def.'s Reply in

5   Support of Mot. to Strike ("DRMTS ") [Doc. #62].

6   **II.   PLAINTIFF'S FIRST AMENDED COMPLAINT**

7     *A.   Motion for Leave to Amend*

8     Pursuant to Rule 15 of the Federal Rules of Civil Procedure, a party may

9   amend its pleadings once as a matter of course in the following time frames:

10    A.   Before being served with a responsive pleading, or

11    B.   Within 20 days after serving the pleading if a responsive pleading is
    not allowed and the action is not yet on the trial calendar.

12  Fed. R. Civ. P. 15(a)(1).

13    In all other cases, a party may amend its pleadings only with opposing party's

14  written consent or the court's leave. Fed. R. Civ. P. 15(a)(2).  The Court is instructed to

15  freely give leave "when justice so requires."  *Id.*

16

17    Plaintiff filed his Initial Complaint [Doc. # 23] on June 1, 2006.  The case was

18  transferred to this Court on December 17, 2007.  Defendant filed its Answer to Plaintiff's

19  Initial Complaint ("Answer") [Doc. # 26] on January 3, 2008.  Plaintiff lodged his First

20  Amended Complaint [Doc. #40] on April 25, 2008, nearly four months after Defendant

21  filed its Answer.  Plaintiff failed to file an accompanying supporting motion to amend his

22  Complaint.  On May 12, 2008, Defendant filed its Motion to Strike Plaintiff's First

23  Amended Complaint ("DMTS") [Doc. #45].

24    Because Plaintiff's First Amended Complaint was lodged after Defendant's

25  responsive pleading, Plaintiff may amend his Complaint only with the Court's leave.  For

26  the reason's set forth below, the Court finds that the interests of justice do not support

27  Plaintiff filing an amended complaint. The Court, therefore, denies leave and grants

28  Defendant's Motion to Strike Plaintiff's First Amended Complaint.

*A.      Relief from Stipulation*

Whether Plaintiff may amend his complaint to assert a 1985(3) conspiracy claim against the Individual Defendants turns, in part, on whether Plaintiff is entitled to relief from his stipulation and the court order entered thereon by the district court in the Northern District of California.

Rule 60(b) of the Federal Rules of Civil Procedure permits, on motion and just terms, relief from a final judgment, order, or proceeding, upon a showing of, in relevant part, "fraud (whether previously called extrinsic or intrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Plaintiff did not make a Rule 60 motion to relieve himself from the order entered by the district court in the Northern District of California dismissing the Individual Defendants with prejudice. In Plaintiff's Response, however, he alleges that "through [Aparicio's] deceit and misrepresentations, [Plaintiff] was cajoled into signing a stipulation that [again] was misrepresented by Aparicio," and urges the Court to recognize that "[i]n the interest of justice, <u>this court cannot allow the defendant's misrepresentations to stand.</u>" POMTS at 2:11-12. [Doc. #52]. Because courts construe pro se pleadings liberally, Plaintiff's allegations of misrepresentation are treated as a Rule 60(b) motion for relief from the Northern District of California district court's order entered pursuant to the parties' stipulation agreement.

Defendant asserts that Aparicio did not misrepresent the law, and that ADA violations cannot serve as a predicate for a conspiracy claim under § 1985(3).

Section 1985(3) in relevant part provides:

(3) Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

1    It is well-established that section1985(3) applies to non-racial bias claims only

2    when it can be shown the conspiracy was motivated by a "class-based, insidiously

3    discriminatory animus."   *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985)

4    (quotations omitted).  The sort of "class" to which section 1985(3) speaks is one whose

5    members have been determined to be a "suspect or quasi-suspect classification requiring

6    more exacting scrutiny or [for whom] Congress has indicated through legislation that the

7    class required special protection."  *Id.*

8    Courts have explicitly held that disabled individuals do not constitute a "class"

9    within the meaning of section 1985(3).  *See, e.g.*, *D'Amato v. Wis. Gas Co.*, 760 F.2d

10   1474, 1486-87 (7th Cir. 1985) ("The legislative history of Section 1985(3) does not

11   suggest a concern for the handicapped."); *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173,

12   1176-77 (10th Cir. 1983) ("[T]o hold that even if there could be here developed by further

13   pleading a class of handicapped persons with sufficient conditions or factors in common

14   derived from their *physical* condition to be ascertainable or identifiable, it could not come

15   within the province of 42 U.S.C. § 1985(3)."); *see also Story v. Green*, 978 F.2d 60, 64

16   (2d Cir. 1992) ("We note in passing that most authorities have not considered disability to

17   be a suspect or quasi-suspect classification."); *Trautz v. Weisman*, 819 F.Supp. 282, 292

18   (S.D.N.Y. 1993) (recognizing that "[o]ther courts have explicitly held that disabled

19   individuals do not constitute a 'class' within the meaning of § 1985(3)" and citing

20   *D'Amato, Wilhelm* and *Green* for that proposition).

21   Although at least one court has held that a class of individuals with disabilities *may*

22   be protected under section 1985(3), it limited its reasoning to those claims arising outside

23   of the employment context.  *Trautz*, 819 F.Supp. at 293.  That court noted  "[a] valid

24   distinction might exist for cases arising in the work setting where disability is sometimes

25   related to a person's ability to perform a given task."  *Id.*

26   Conversely, the Ninth Circuit has reasoned that even if disabled persons constitute

27   a protected class under section 1985(3), section 1985(3) cannot serve to circumvent the

28   remedial structure of the ADA.  *Sauter v. State of Nevada*, 1998 WL 196630 (9th Cir.

1998).[3]  In *Sauter v. State of Nevada*, the Ninth Circuit addressed whether ADA

violations can stand as a predicate to a conspiracy claim under 42 U.S.C. § 1985(3).  *Id.*

There, the plaintiff alleged that the defendant conspired to deprive him of his rights under

the ADA.  *See id.* at 1.  The Ninth Circuit noted that the conspiracy claim implicated "an

animus toward a congressionally protected class," but held that such a claim was not

cognizable because section 1985(3) "cannot serve as a vehicle to enforce statutory rights

when the statute in question has its own remedial structure."  *Id.*

This Court finds the Ninth Circuit's reasoning in *Sauter* persuasive.  The ADA

clearly does not permit claims against individual employees.  *Walsh v. Nevada Dept. of

Human Res.*, 471 F.3d 1033, 1037-38 (9th Cir. 2006).  To permit an aggrieved plaintiff to

assert a conspiracy claim against individual employees for alleged ADA violations would

effectively permit a plaintiff to circumvent the remedies of the ADA and the

congressional intent to limit liability for ADA violations to employers only.

Aparicio, therefore, did not misrepresent the relevant law to Plaintiff, and Plaintiff

is therefore bound by his stipulation to dismiss the Individual Defendants with prejudice.

Accordingly, Defendant's Motion to Strike Plaintiff's Lodged First Amended Complaint

[Doc. #45] is granted.  Plaintiff's Lodged First Amended Complaint [Doc. #40] is

stricken.

B.      *Plaintiff's Conspiracy Claim*

In addition to the procedural grounds discussed above, the Court finds that

Plaintiff's conspiracy claim fails on the merits and thus amendment of his Complaint is

not proper.  Conspiracy claims must be alleged with factual specificity.  *See Karim-

Panahi v. Los Angeles Police Dept.*, 839 F.2d 621 (9th Cir. 1988).   The Ninth Circuit

had stated that "[a] claim under [42 U.S.C. § 1985] must allege facts to support the

allegation that defendants conspired together.  A mere allegation of conspiracy without

---

[3]Because this case is unpublished, the Court analyzes *Sauter v. State of Nevada* only
for its persuasive analysis, and not for precedential value.

1    factual specificity is insufficient." *Id.* at 626.  A failure to plead with sufficient specificity

2    is grounds for dismissal for failure to state a claim upon which relief can be granted.  Fed.

3    R. Civ. P. 12(b)(6).

4         In support of his conspiracy claim, Plaintiff alleges:

5         The individual named defendants knew or should have know that mental
          disability constitutes a form of disability qualifying an employee to

6         protections under the ADA.  42 USC 12101-12117 Disparate Treatment.
          Each of them assisted one-another to facilitate denial of Plaintiff's Civil

7         Rights.  The individual defendants were dismissed by stipulation on all
          causes of action, including Aiding and Abetting in the denial of Plaintiff's

8         Civil Rights.
               Pursuant to Title 42 USC, Chapter 21, Section 1985(3), this amended

9         complaint hereby states and clarifies that each individual is reinstated
          specifically in this NEW cause of action, and shall be held accountable,

10        jointly and severally, to the full extent of the law.  The reinstated individual
          defendants, each of them, is subject to personal damages in favor of

11        Plaintiff under Title 42 USC, Chapter 21, Section 1986, as a Action For
          Neglect To Prevent the Denial of Civil Rights sustained by the Plaintiff

12        during his employment.

13   Pl.'s First Amended Complaint at 6:01-13 [Doc. # 40].

14        Plaintiff's factual allegations are insufficient and lack the required specificity to

15   state a claim.  Assuming *arguendo* that Plaintiff is disabled within the meaning of the

16   ADA, Plaintiff does not allege facts to support that the Individual Defendants were

17   sufficiently aware of his disability.  And even if the Individual Defendants were

18   sufficiently apprised of Plaintiff's disability, Plaintiff does not allege facts to support

19   evidence of a conspiracy.  Plaintiff does not allege any facts to support that the Individual

20   Defendants took specific actions in order to deny Plaintiff of his civil rights.  Indeed,

21   Plaintiff fails to specify what actions, if any, the Individual Defendants took in that

22   regard.  Instead, Plaintiff merely restates the conspiracy cause of action by alleging:

23   "[e]ach of [the Individual Defendants] assisted one-another to facilitate denial of

24   [Plaintiff's] Civil Rights."  Pl.'s First Amended Complaint at 6:03-04 [Doc. #40].

25        Notably, this is not a case where the facts are undeveloped and additional

26   discovery could cure the defects in Plaintiff's conspiracy count.  Here, Plaintiff lodged his

27   First Amended Complaint after the completion of discovery.  There are no additional

28

1  facts that reasonably could arise that would permit Plaintiff to plead his conspiracy claim

2  with sufficient specificity.

3        The conspiracy claim alleged in Plaintiff's First Amended Complaint would not

4  survive a motion to dismiss.  Plaintiff's amended complaint is therefore futile.  Even if

5  ADA violations may serve as a predicate for civil rights violations under 42 U.S.C. §

6  1985(3), and Plaintiff has alleged a legally cognizable claim, Plaintiff has yet to state a

7  claim upon which relief may be granted due to factual insufficiency.  Defendant's Motion

8  to strike Plaintiff's Lodged First Amended Complaint [Doc. #45] is therefore granted, and

9  Plaintiff's Lodged First Complaint [Doc. #40] is stricken.

10  **III.    DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**

11        *A.  Summary Judgment Standard*

12        A party moving for summary judgment has the initial burden to demonstrate, "with

13  or without supporting affidavits[,]" the absence of a genuine issue of material fact and

14  that judgment as a matter of law should be granted in the moving party's favor.  *Celotex*

15  *Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56).  A material fact is

16  genuine "if the evidence is such that a reasonable jury could return a verdict for the

17  nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The facts

18  material in a specific case are to be determined by the substantive law controlling a given

19  case or issue.  *Id.*

20        Once the moving party has met the initial burden, the opposing party must "go

21  beyond the pleadings" and "set forth specific facts showing that there is a genuine

22  [material] issue for trial."  *Id.* (internal quotes omitted).  In opposing summary judgment,

23  Plaintiff is not entitled to rely on the allegations of his complaint, or upon conclusory

24  allegations in affidavits. Fed. R. Civ. P. 56(e); *Cusson-Cobb v. O'Lessker*, 953 F.2d

25  1079, 1081 (7th Cir. 1992).  Further, "a party cannot manufacture a genuine issue of

26  material fact merely by making assertions in its legal memoranda."  *S.A. Empresa de*

27  *Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235,

28  1238 (9th Cir. 1982).  Because Plaintiff will bear the burden of proof at trial as to some of

1    the elements essential to his case, Plaintiff can withstand Defendant's Cross-Motion for

2    Summary Judgment only by making a showing sufficient to establish a genuine issue of

3    fact regarding those elements and showing that the dispute properly may be resolved only

4    by the fact-finder because it could reasonably be resolved in favor of either party.

5    *Celotex*, 477 U.S. at 321.  Plaintiff must present specific facts in support of his

6    contentions and must support these facts by proper evidentiary material, which show that

7    a fact-finder could reasonably find in Plaintiff's favor; Plaintiff cannot merely rest on his

8    pleadings. Fed. R. Civ. P. 56(e).  *See also T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors*

9    *Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987) (citations omitted).

10        The Court is not to make credibility determinations with respect to the evidence

11   offered and is required to draw all inferences in a light most favorable to the non-moving

12   party.  *T.W. Elec. Serv.,* 809 F.2d at 630-31 (9th Cir. 1987) (citing *Matsushita Elec.*

13   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Summary judgment is not

14   appropriate "where contradictory inferences may reasonably be drawn from undisputed

15   evidentiary facts[.]"  *Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324

16   (9th Cir. 1980).  Where a response to a motion for summary judgment is not filed, it

17   should nonetheless be denied "where the movant's papers are insufficient to support that

18   motion or on their face reveal a genuine issue of material fact."  *See Henry v. Gill Indus.,*

19   *Inc.*, 983 F.2d 943 (9th Cir. 1993); *see also* LRCiv. 7.2(I).

20   . . .

21   . . .

22   . . .

23   . . .

24   . . .

25   . . .

26   . . .

27   . . .

28   . . .

**B.  Plaintiff's Claim under the Americans with Disabilities Act ("ADA")[4]**

The ADA prohibits discrimination against a "qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  A disability, with respect to an individual, means:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

To establish a *prima facie* case under the ADA, a plaintiff must prove (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job either with or without reasonable accommodation; and (3) he was

---

[4]  The ADA was recently amended by the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1, 2009.  Pub. L. 110-325.  In passing the ADAAA, Congress intended to "reinstate the broad scope of the protection to be available under the ADA," and explicitly overruled those cases that had "narrowed the broad scope of protection intended to be afforded by the ADA" and which had, as a result, "eliminat[ed] protection for many individuals whom Congress intended to protect."  *Id.*  Specifically, the ADAAA overrules cases cited in this Order, including *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), and *Toyota Motor Mfg, Ky. Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

On Feb. 13, 2009, the Ninth Circuit declined to determine whether the ADAAA applies retroactively.  *Rohr v. Salt Riber Project Agricultural Imp. and Power Dist.*, — F.3d —, 2009 WL 349798 at 1 (9th Cir. Feb. 13, 2009).  On January 15, 2009, however, the District Court for the Western District of Kentucky held that the ADAAA was not retroactively applicable.  2009 WL 111737 at 5-6 (D.Ky. 2009).  In so holding, the district court applied the United States Supreme Court's retroactivity analysis and reasoned that Congress's failure to address retroactivity explicitly in the  terms of the ADAAA and the similar void in the congressional record evidenced "no clear congressional intent favoring retroactive application."  *Id.*  In addition, the district court emphasized that because the ADAAA "broadens the definition of 'disability' . . . the amended Act would potentially increase [employers'] liability for past acts."  *Id.*  This Court finds that the ADAAA is not retroactively applicable and does not govern this matter.

1  terminated or subjected to an adverse employment action because of his disability.

2  *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). If a plaintiff has met this

3  initial burden, the burden then shifts to defendant to put forward a legitimate, non-

4  discriminatory reason for its actions.   *Snead v. Metro. Prop. & Cas Ins. Co.*, 237 F.3d

5  1080, 1093 (9th Cir. 2001).  If the defendant articulates a legitimate, non-discriminatory

6  reason for its actions, the burden shifts again to the plaintiff to show that the defendant's

7  stated reason is no more than a pretext for discrimination.  *Id.*

8          1.  Qualified Individual

9          The ADA defines a "qualified individual" as "an individual with a disability

10  who satisfies the requisite skill, experience, education, and other job-related requirements

11  of the employment position such person holds or desires," 29 C.F.R. § 1630(m), and

12  "who, with or without reasonable accommodation, can perform the essential functions of

13  the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see*

14  *id*.  Qualification standards include the " skill, experience, education, physical, medical,

15  safety and other requirements established by a covered entity as requirements which an

16  individual must meet in order to be eligible for the position held or desired."  29 C.F.R. §

17  1630(q).

18          In some instances, employers discover evidence of employee misconduct after the

19  alleged discriminatory discharge; misconduct that would have resulted in the employee's

20  termination had the employer known of it.  *See, e.g.*, *McKennon v. Nashville Banner*

21  *Publ'g Co.*, 513 U.S. 352 (1995).   In *McKennon v. Nashville Banner Publishing Co.,* the

22  United States Supreme Court held that to use "after-acquired evidence" of wrongdoing as

23  an absolute bar to relief is inconsistent with the purpose of the ADEA.  *Id.* at 361-63.

24  Because the ADEA is a part of Title VII's statutory scheme to protect employees in the

25  workplace nationwide, and the ADA is also a part of that scheme, the use of after-

26  acquired evidence of wrongdoing to bar relief for an employer's act of discrimination is

27  similarly inconsistent with the purpose of the ADA.  *See id.* at 357; *see also Rooney v.*

28  *Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005) ("We see no distinction for [the

-18-

1   purpose of the after-acquired evidence doctrine] between an age discrimination claim like

2   the one in *McKennon* and an ADA claim.").  Consequently, after-acquired evidence

3   cannot stand as an affirmative defense to employment discrimination under the ADA.

4   *Schmidt v. Safeway Inc.*, 864 F.Supp. 991, 994-95 (D.Or. 1994) (holding that evidence

5   acquired during the discovery process that employee had failed to disclose on his

6   employment application a conviction that occurred 40 years prior did not bar plaintiff

7   from all relief under the ADA, although it could limit damages).

8        If after-acquired evidence were sufficient, standing alone, to warrant the grant of

9   partial summary judgment to a defendant on the issue of whether the plaintiff is a

10  "qualified individual" under the ADA, the after-acquired evidence would effectively

11  operate as an absolute bar to relief in the same way it would if it were a permissible

12  affirmative defense.  The grant of partial summary judgment solely on the basis of after-

13  acquired evidence would, therefore, be in violation of the principles articulated in

14  *McKennon*.  It stands to reason then that after-acquired evidence is not a sufficient

15  condition to warrant the grant of summary judgment for Defendant.   Thus, Defendant has

16  not shown an absence of a genuine issue of material fact with regard to whether Plaintiff

17  is a "qualified individual" within the meaning of the ADA.  Defendant asserts only that

18  Plaintiff was presumptively disqualified for the Sales Agent position Plaintiff held and the

19  Talent Acquisition Coordinator position he sought as a result of his felony convictions for

20  fraud and misrepresentations on his resume.  Both of these facts, however, were

21  discovered after Defendant terminated Plaintiff's employment and are thus "after-

22  acquired evidence" that cannot stand as a basis for summary judgment in favor of

23  Defendant.

24        2.  Disability

25        The term 'disability' under the ADA means "a physical or mental impairment that

26  substantially limits one or more of the major life activities of [the] individual" or "[a]

27  record of such an impairment."   42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).  The term

28  "substantially limited"suggests "considerable" or "to a large degree."  *Toyota Motor Mfg.,*

1   *Ky., Inc. v. Williams*, 534 U.S. 184, 196-97, 122 S.Ct. 681, 691, 151 L.Ed.2d 615 (2002).

2   Thus, a plaintiff is "substantially limited" in a major life activity only if the plaintiff is

3   "significantly restricted as to the condition, manner, or duration under which [he] can

4   perform a major life activity" in comparison to an "average person in the general

5   population." *Fraser v. Goodale*, 342 F.3d 1032, 1040 (9th Cir. 2003) (quoting 29 C.F.R.

6   § 1630.2(j)(1)(ii)).

7        The terms of the ADA are to be strictly construed to create a demanding standard

8   for qualifying as disabled. *Toyota*, 534 U.S. at 197, 122 S.Ct. at 691.  Determining

9   whether an individual has a disability within the meaning of the ADA is, therefore, "an

10  individualized inquiry." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483, 119 S.Ct.

11  2139, 2147, 144 L.Ed.2d 450 (1999).  This requires the Court to consider the "nature,

12  severity, duration, and impact" of the impairment.  *Frasier*, 342 F.3d at 1039.

13       Sleep constitutes a major life activity.  *Head v. Glacier N.W. Inc*., 413 F.3d 1053,

14  1060 (9th Cir. 2005); *McAlindin v. County of San Diego*, 192 F.3d 1226, 1234 (9th Cir.

15  1999).  To establish a substantial limitation on the major life activity of sleeping for the

16  purpose of defeating summary judgment, all that is required is testimony alleging great

17  difficulty in sleeping. *Head*, 413 F.3d at 1060.  Statements regarding sleep deprivation,

18  however, may not be "merely self-serving and must contain sufficient detail to convey the

19  existence of an impairment." *Id.* at 1059 (citing *Frasier*, 342 F.3d at 1043-44).  Moreover,

20  any impairment must be substantially limiting in light of any corrective or mitigating

21  measures. *Sutton*, 527 U.S. at 982-83, 119 S.Ct. at 2146-47 ("A person whose physical or

22  mental impairment is corrected by medical or other measures does not have an

23  impairment that presently 'substantially limits' a major life activity.").

24       Here, Plaintiff has not provided sufficient detail to convey the existence of an

25  impairment that causes Plaintiff to be substantially limited in the major life activity of

26  sleep.  Plaintiff states only that he suffers from an "insomnia condition" that has resulted

27  in "occupational and social impairment with occasional decrease in work efficiency and

28  intermittent periods of my inability to perform occupational tasks."  PMSJ Aff. ¶ 4 [Doc.

-20-

#67].  In addition, Plaintiff acknowledges that his sleep interruptions are "controlled by the use of the prescribed medication Trazodone, HCL, 50MG, taken nightly."  *Id.*  Notably, Plaintiff does not state with specificity how many hours each night he sleeps, nor how the deficiency in hours of sleep affects him.  With regard to how his insomnia condition affects him, Plaintiff merely restates his diagnosis for PTSD, as defined by the Veterans Administration.  And by Plaintiff's own admissions, his insomnia condition does not result in *substantial* limitation; rather, he states only that his PTSD results in *occasional* decrease in work efficiency and *intermittent* periods of inability to perform occupational tasks.   Moreover, to the extent Plaintiff has demonstrated impairment by PTSD , the fact that his insomnia condition is "controlled" by medication renders his impairment not substantially limiting.  Although Plaintiff emphasizes that "[t]he use of the medication Trazodone does not cure [his] sleep interruptions, it only allows [him] to compensate for the otherwise interrupted sleep," Plaintiff has still failed to allege any facts that would demonstrate that his insomnia condition is substantially limiting in light of the corrective measure of medication.  PMSJ at 7:6-9 [Doc. #67].

As with sleep, work constitutes a major life activity. 29 C.F.R. 1630.2(j)(3) (addressing the "major life activity of working"); *see also Toyota* 534 U.S. at 197-98, 122 S.Ct. at 691 (assuming that the ability to perform manual tasks is major life activity); *EEOC v. United Parcel Serv., Inc.*, 306 F.3d 794, 802 (9th Cir. 2002) (stating with regard to the major life activity of working "the Supreme Court has assumed, but has not decided, [working] is a major life activity").  The critical inquiry in determining whether an individual is substantially limited in the majority life activity of working is whether the claimant is unable to perform a variety of tasks that are of "central importance to most people's daily lives," not whether the claimant is unable to perform the tasks associated with his or her specific job.  *See Toyota*, 534 U.S. at 197-98, 122 S.Ct. at 691.  Thus, with respect to the major life activity of working, "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training,

1   skills and ability." 29 C.F.R. § 1630.2(j)(3)(I).  Notably, "the inability to perform a

2   single, particular job does not constitute a substantial limitation in the major life activity

3   of working." *Id.*    To establish a substantial limitation in the major life activity of

4   working, it is insufficient for plaintiffs to merely submit evidence of a medical diagnosis

5   in order to prove disability.  *Toyota*, 534 U.S. at 197-98, 122 S.Ct. at 691.  Rather, the

6   ADA requires claimants "to prove a disability by offering evidence that the extent of the

7   limitation [caused by their impairment] in terms of their own experience . . . is

8   substantial." *Id.* at 197-98, 122 S.Ct. at 691-92 (citing *Albertson's, Inc. v. Kirkingburg*,

9   527 U.S. 555, 567 (1999).

10          Here, Plaintiff had failed to put forth any facts to suggest that he is substantially

11  limited in the major life activity of working.  At deposition, Plaintiff testified that without

12  medication his insomnia condition would affect his ability to work; for his PTSD displays

13  "as a sleep disorder, and I have medication to get to sleep.  But without the medication I

14  have a serious sleep disorder which affects everything else in my life, working, being able

15  to be around crowds."  Plaintiff's assertions, however, are devoid of facts to indicate the

16  extent of his limitation, if any, in terms of his own experience.  In addition, because

17  Plaintiff's insomnia condition is controlled by medication, Plaintiff is not substantially

18  limited in the major life activity of sleep or work.

19          Interrelated to working as a major life activity, interacting with others also

20  constitutes a major life activity.  *Head,* 413 F.3d at 1060.  To show substantial limitation

21  in interacting with others a claimant must establish that "relations with others [are]

22  characterized on a regular basis by severe problems, for example, consistently high levels

23  of hostility, social withdrawal, or failure to communicate when necessary." *Id.*

24          Here, Plaintiff asserts generally that his PTSD manifests as "depression, anxiety,

25  cynicism and distrust of authority, anger, psychiatric or emotional numbing, reaction

26  under stress with survival tactics, negative self-image, memory impairment, emotional

27  distance in intimate relationships, survivor guilt, avoidance of activities that arouse

28  memories of the war, and flashbacks to combat experience." PMSJ Aff. ¶ 5 [Doc. # 67].

As with his insomnia condition, however, Plaintiff asserts that he is "currently taking the prescription medication Flouoxetine HCL 20MG, daily, to stabilize my mood, and allow normal occupational and social relationships in spite of the above mentioned symptoms." *Id.* Plaintiff fails to provide specific assertions regarding his personal experience with PTSD that would demonstrate that Plaintiff is substantially limited in the major life activity of interacting with others. And by Plaintiff's own admissions, his social impairments are mitigated by medication, thereby rendering his impairment not substantially limiting.

To the extent Plaintiff relies on his 30% disability rating by the Veterans Administration as evidence that he is disabled under the ADA, that reliance is misplaced. *See Thorn v. BAE Sys. Haw. Shipyards, Inc.*, 586 F.Supp.2d 1213, 1221 (D.Hawaii 2008). Veterans Administration percent ratings attempt to quantify a decrease in a veteran's earning capacity. *See id.* The ratings "represent as far as can practicably be determined the average impairment in earning capacity resulting from such diseases and injuries and their residual conditions in civil occupations." *Id.* (citing 38 C.F.R. § 4.1). The Veterans Administration percent ratings, therefore, are assessed pursuant to a standard entirely different from that imposed by the ADA, and are thus insufficient to create a genuine issue of fact that a plaintiff is disabled under the ADA. *Id.*

The ADA requires Plaintiff to establish that he suffers from an impairment that substantially limits a major life activity. Although Plaintiff may have demonstrated that he has a history of suffering from PTSD, an impairment, Plaintiff has not demonstrated that the impairment substantially limits any major life activity. Thus, Plaintiff has failed to demonstrate a genuine issue of material fact regarding whether he is "disabled" under the ADA, and summary judgment in Defendant's favor on this issue is warranted.

. . .

. . .

. . .

1

2

### 3.  Discrimination

3            Under the ADA, no qualified individual with a disability "shall, by reason of such

4    disability, be excluded from participation in or be denied the benefits of such services,

5    programs or activities of a public entity, or be subjected to discrimination by any such

6    entity." 42 U.S.C. § 12132.  An employer's obligations under the ADA are triggered

7    when "an employee or an employee's representative [gives] notice of the employee's

8    disability *and the desire for accommodation*."   *Downey v. Crowley Marine Serv., Inc.*,

9    236 F.3d 1019, 1023 n.6 (9th Cir. 2001) (*citing Barnett v. U.S. Air, Inc.*, 228 F.3d 1105,

10   1114 (en banc), *vacated in part on other grounds, U.S. Airways, Inc. v. Barnett*, 535 U.S.

11   391 (2002)) (emphasis added).  Although Plaintiff emphasizes in his pleadings that an

12   employer has a "common sense" duty to inquire as to the full extent of an employee's

13   impairment, if the employee has admitted such an impairment, Plaintiff's reasoning is

14   misguided.  *See* Pl.'s Reply at 8:19-20.  Under the ADA, an employer must engage in an

15   interactive process with a disabled employee to determine an appropriate reasonable

16   accommodation when "an employee requests an accommodation or an employer

17   recognizes the employee needs an accommodation but the employee cannot request it

18   because of a disability." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir.

19   2002) (citing *Barnett v. U.S. Air., Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (en banc),

20   *vacated in part on other grounds*, *U.S. Airways, Inc. v. Barnett*, 525 U.S. 391 (2002).

21   Contrary to the implications of Plaintiff's assertion, the ADA does not require an

22   employer to inquire into the extent of an employee's disability, and Plaintiff admits as

23   much.  Pl.'s Reply at 8 [Doc. # 72].  Not only is such an inquiry not required, but under

24   some circumstances it may very well be impermissible.  42 U.S.C. § 12112(d)(4) ("A

25   covered entity shall not [subject to certain exceptions] make inquiries of an employee as

26   to whether the employee is an individual with a disability or as to the nature of or severity

27   of the disability . . . .").  Rather, an employer is only required to engage in an interactive

28

-24-

process with an employee *regarding an accommodation*, if the employer is on notice that the employee suffers from a disability that substantially limits a major life activity and is in need of an accommodation.

Here, Plaintiff failed to put Defendant on notice that Plaintiff suffered from an impairment that substantially limited a major life activity and necessitated accommodation.  Notably, Plaintiff failed to inform Defendant that he suffered from PTSD, and only vaguely mentioned to co-workers and supervising trainers that he was dealing with a "mental disability" or a "stress related disability."  Plaintiffs assertions to co-workers and supervising trainers were insufficient to trigger Defendant's obligations under the ADA to begin an interactive process with Plaintiff to find a reasonable accommodation.  Although it is disputed whether Plaintiff put Defendant on notice that he was a "Disabled Veteran," even assuming that Plaintiff did put Defendant on notice to this fact, this alone is insufficient to trigger Defendant's duties under the ADA.  Although Plaintiff may have checked the box "Disabled Veteran" on his POE,  he also expressly stated that he did not require any form of accommodation.

Notably, this is not a case where Plaintiff's disability, if any, rendered Plaintiff unable to notify Defendant of his disability and the need for an accommodation.  Plaintiff was informed at the New Hire Orientation how to access Defendant's intranet site, and acknowledged in a signed form that it was his responsibility to access that site to find out more about Defendant's policies and procedures, including Defendant's ADA policy. Plaintiff failed to access Defendant's intranet, which would have provided Defendant with information on how to inform Defendant of his disability, if any, and the need for an accommodation.

Finally, even if Plaintiff's POE were sufficient to notify Defendant of its obligations under the ADA, Plaintiff acknowledges that he was not in need of an accommodation until the final 20 days of his employment, at which time he had already been put on Defendant's Performance Improvement Plan. Consequently, by Plaintiff's

1   own admissions, Plaintiff's performance, and not his disability, caused Plaintiff to be

2   placed on Defendant's Performance Improvement Plan.  Defendant, therefore, has

3   demonstrated the lack of genuine issue of material fact with regard to whether Plaintiff

4   was discriminated against on the basis of his disability, if any, and Plaintiff has failed to

5   rebut this showing.  Thus, summary judgment in Defendant's favor on this issue is

6   warranted.

7
    C.   *Plaintiff's Claims for Gross Negligence, Concurrent Negligence and Willful*
8        *Infliction of Emotional Harm*

9       Plaintiff's gross negligence, concurrent negligence, and willful infliction of

10  emotion harm causes of action are predicated upon his ADA claim.  With regard to the

11  gross and concurrent negligence counts, Plaintiff asserts in his Initial Complaint that

12  "Defendant . . . knew or should have know that [its] failure to comply with state and

13  federal employment regulations would result in disparate treatment by the

14  unacknowledged class of employees under their direct control, of which Plaintiff was a

15  member . . . ." Pl.'s Initial Complaint at 4:12-16 [Doc. # 23].  Plaintiff further asserts in

16  his pleadings that Defendant handled his POE negligently by failing to enter that Plaintiff

17  identified himself as a "Disabled Veteran."  Pl.'s Reply [Doc. #72].  With regard to the

18  willful infliction of emotional harm cause of action, Plaintiff asserts in his Initial

19  Complaint "[t]he defendant knowingly increased the job stress level on [Plaintiff] by

20  decreasing the telephone-call volume to ensure his failure to comply with sales goals

21  preset by the defendants . . . ."  Pl.'s Initial Complaint at 5:06-08 [Doc. #23].

22      Because Plaintiff's gross negligence, concurrent negligence, and willful infliction

23  of emotion harm causes of action are predicated upon his ADA claim, and summary

24  judgment in Defendant's favor is warranted on the issues of  "disability" and

25  "discrimination" under the ADA, Plaintiff's gross negligence, concurrent negligence, and

26  willful infliction of emotion harm causes of action are also without merit.  Thus, summary

27  judgment in Defendant's favor on these causes of action is also justified.

28

Accordingly, IT IS HEREBY ORDERED as follows:

1.       Defendant's Motion to Strike Plaintiff's First Amended Complaint [Doc. # 45] is GRANTED.

2.       Plaintiff's Motion for Partial Summary Judgment on the Issue of ADA Qualification [Doc. # 67] is DENIED.

3.       Defendant's Cross-Motion for Summary Judgment [Doc. # 69] is GRANTED.

4.       All other outstanding motions are DENIED AS MOOT.

5.       The Clerk of the Court shall enter judgment accordingly and shall then close its file in this matter.


DATED this 26th day of February, 2009.


_____
Cindy K. Jorgenson
United States District Judge

-27-